UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
CYNTHIA OWENS,

                        Plaintiff,

    -against-
                                                 **COMPLAINT**

CHILDRENS COMMUNITY SERVICES, INC,      **JURY TRIAL DEMANDED**

                  Defendant.
-------------------------------------------------------------------X

Plaintiff CYNTHIA OWENS ("Plaintiff" or "Ms. Owens"), by and through her attorneys, JOSEPH & NORINSBERG, LLC, alleges against Defendant CHILDRENS COMMUNITY SERVICES, INC, ("Defendant" or "CCS"), as follows:

## PRELIMINARY STATEMENT

1. Plaintiff brings this action against Defendant for, <u>inter alia</u>: (a) retaliation for her complaints about Defendant's violations of the Federal Labor Standards Act ("FLSA"), in violation of 29 U.S.C.A. § 215(a)(3); (b) retaliation for her complaints about Defendant's violations of the New York Labor Law ("NYLL"), in violation of NYLL § 215(a)(3); (c) retaliation for her complaints about Defendant's discriminatory conduct in violation of the New York City Human Rights Law ("NYCHRL"); and (d) any other claims based on the allegations set forth herein.

2. Plaintiff was employed as an Acting Director of Human Resources for Defendant Children's Community Services, Inc., from January 28, 2018, until she was unlawfully terminated on July 26, 2019.

3. From the start, Ms. Owens observed that CCS was flagrantly violating state and federal laws regarding lawful wages. Specifically, CCS was denying its employees overtime

1

wages, at the mandatory, statutory rate of one-and-one-half times their regular rate of pay, for all hours worked over 40 in a workweek. Likewise, CCS was unlawfully deducting parking and traffic tickets from its employees' wages, in express violation of the law.

4. Ms. Owens, as director of Human Resources, brought these violations to the attention of Defendant's CEO, Thomas Bransky ("Bransky"). She also notified the company's COO, Ruth Mandelbaum ("Mandelbaum"), of these violations. However, CCS willfully ignored Ms. Owens' requests and continued violating the law with impunity.

5. Similarly, Ms. Owens observed that CCS was engaging in discriminatory conduct, including but not limited to: i) asking Ms. Owens to terminate an employee after the employee complained about racial discrimination – something Ms. Owens refused to do since it was clearly unlawful act; ii) orchestrating the involuntary resignation of an employee after the employee raised concerns about the safety of CCS' homeless shelters; iii) maintaining an inconsistent leave policy; and iv) maintaining a company-wide policy of limiting its job applicants for the position of driver, to applicants over the age of 30.

6. Ms. Owens opposed CCS' unlawful, discriminatory policies and tried to institute policies that were in compliance with the law. However, CCS willfully and deliberately ignored her recommendations, and instead, persisted in its pattern and practice of violating the law.

7. Worse still, on July 26, 2019, Ms. Owens was willfully and unlawfully fired in retaliation for opposing CCS' unlawful policies, and submitting complaints about same.

8. Ms. Owens now seeks compensatory damages and equitable relief to redress Defendant's blatant and repeated violations of her rights under the above-referenced state, federal and municipal laws protecting the rights of employees in the workplace.

## JURISDICTION AND VENUE

9. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, as this action arises under 29 U.S.C.A. § 215(a)(3), et seq.

10. The Court's supplemental jurisdiction is invoked pursuant to 28 U.S.C. § 1367(a), which confers supplemental jurisdiction over all non-federal claims arising from a common nucleus of operative facts, such that they form part of the same case or controversy under Article III of the United States Constitution.

11. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b) (2), as all actions comprising the claims for relief occurred within this judicial district, and pursuant to 28 U.S.C. § 1391(b) (1), as the Defendant resides within this judicial district.

## DEMAND FOR JURY TRIAL

12. Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

13. Plaintiff is an adult individual residing in the County of Nassau, in the City and State of New York.

14. At all relevant times, Plaintiff was a full-time "employee" of Defendant CCS, and is entitled to the protections as defined by the FLSA, NYLL, and NYCHRL.

15. Defendant CCS is a domestic, not-for-profit organization organized under the law of New York, with its principal place of business located at 91-12 175th Street, Suite 2B, in the County of Queens, in the City and State of New York.

16. At all relevant times, Defendant controlled the terms and conditions of Plaintiff's employment, and was and is an "employer" within the meaning of the FLSA, NYLL, and

NYCHRL.

17. At all relevant times, Defendant was an "employer" under the FLSA, 29 U.S.C. § 203(d), subject to the provisions of 29 U.S.C. §§ 201, *etseq*. Further, at all times relevant to this action, Defendant was engaged in interstate commerce or in the production of goods for commerce, as defined by the FLSA, and Defendant's qualifying annual business exceeds $500,000.00.

## FACTUAL ALLEGATIONS

18. Plaintiff began working as the Acting Director of Human Resources for Defendant on or about January 28, 2018, until she was unlawfully terminated on July 26, 2019.

19. Plaintiff worked out of CCS' administrative office located at 700 Rockaway Turnpike, in Lawrence, New York.

20. CCS is a not-for-profit agency that provides shelters for families and children. It has at least 30 shelters across the Manhattan, Queens, Bronx, and Brooklyn. As part of its services for the homeless community, CCS hires drivers to aid with picking up homeless families and taking them to available shelters, and also helping families move from one shelter to another.

21. CCS employs over 600 employees, most of whom work as residential aides who work in CCS' homeless shelters.

22. When Plaintiff was first hired, she immediately began working with CCS on several important projects related to payroll and benefits, and began establishing general policies and procedures for all CCS employees.

*Ms. Owens Repeatedly Informs CCS That*
*Its Pay Policies Are Unlawful and Must Be Remedied.*

23. Soon after being hired, Plaintiff learned that many of Defendant's pay policies violated the law and had to remedied without delay. Specifically, a CCS employee – a case

4

manager – alerted Plaintiff that she was not being paid for any hours she worked over 40 in a work week, and this was the third time this was occurring.

24. Ms. Owens immediately notified Defendant's COO, Ruth Mandelbaum, of this wage violation, and explained that under the FLSA and NYLL, non-exempt employees must be paid for their overtime hours at the mandatory, statutory rate of one-and-one-half times their hourly rate.

25. Upon further investigation, Ms. Owens realized that CCS' failure to pay overtime wages was a systemic violation that was being carried out on a company-wide basis. Although CCS used an electronic time clock to record employees' work hours, including overtime hours, the employees were nonetheless being denied wages for their overtime hours.

26. Ms. Owens explained that this policy was unlawful and had to be remedied. In an email dated February 7, 2019, Plaintiff advised that, "staff would have to get paid for what they worked." However, CCS deliberately ignored Ms. Owens and continued violating the law with impunity.

27. Likewise, Ms. Owens noticed that in violation of NYLL § 193, CCS was taking unlawful deductions from its employees on a class wide basis. Specifically, CCS was deducting parking and traffic tickets from its drivers, although this practice is explicitly prohibited under New York labor law.

28. Ms. Owens mentioned this violation several times to multiple individuals in CCS management. However, once again, CCS ignored Ms. Owens and, instead, continued to deduct parking and traffic tickets from its employees, in express violation of the NYLL.

29. Ms. Owens had also informed Audrey Villani ("Villani"), an HR Consultant, about CCS' illegal deductions and Villani confirmed that the pattern and practice of deducting

employees' parking and traffic tickets was, in fact, illegal. However, CCS refused to change its policies.

*Ms. Owens Notifies CCS That It Is Endangering the Children In Its Care
But CCS Ignores This Warning and Excludes Ms. Owens from the Meeting*

30. Ms. Owens was also quickly made aware of CCS' discriminatory policies. Indeed, anyone who made a complaint regarding CCS' policies and practices was summarily fired or compelled to resign.

31. On or about May 13, 2019, a residential aide, Maxine Best, sent an email to Ms. Owens about concerns of the children's safety, since there had recently been an injury in one of the shelters, and Ms. Best wanted to ensure that the shelter she worked at was 100% safe. In response, Ms. Owens tried to set up a meeting between herself, Ms. Best, and Mandelbaum, to address the issues of child safety in the shelters.

32. However, shockingly, despite the seriousness of the issues raised by Ms. Best, Mandelbaum forbid Ms. Owens from attending the meeting, and instead scheduled her own "private" meeting with Ms. Best and another staff member. Clearly, Mandelbaum wanted to sweep this matter under the rug, and therefore, wanted to exclude Ms. Owens from any meetings.

33. CCS had every reason to take this complaint very seriously. A New York Post article had recently reported that "[t]he city found that three-quarters of the inspected hotel rooms at an emergency shelter run by Children's Community Services had problems, including broken cribs, tots sleeping in "unsafe" areas and no kid-proof covers for electrical outlets."[1] The article reported further that, "[t]he Department of Homeless Services slapped CCS with a "poor" rating for its mismanagement of the operation — the second-lowest available."

---

[1] https://nypost.com/2019/02/10/shelter-deemed-unsafe-for-children-yet-organizers-have-over-100m-in-public-funds/ (last viewed on Dec. 12, 2019).

34. The meeting between Ms. Best and Mandelbaum took place two weeks later. However, instead of focusing on repairing the shelters to achieve maximum safety for the children, CCS ignored this problematic issue, and willfully directed Ms. Best to resign "voluntarily."

35. There was no legitimate basis whatsoever for compelling Ms. Best to "voluntarily" resign. Rather, she was unlawfully terminated in retaliation for raising concerns about the safety of the children in CCS' shelters.

36. Moreover, CCS ignored Ms. Best's concerns, and made no attempts to investigate the status of the safety at the CCS shelters.

*Ms. Owens Opposes CCS' Plan to Fire an Employee*
*In Retaliation for Complaining About Racial Discrimination*

37. On or about June 27, 2019, an employee named "S.O." notified Ms. Owens that she was experiencing racial discrimination.

38. When Ms. Owens reported this complaint to Mandelbaum, Mandelbaum ordered Ms. Owens to do an "audit" of this employee's performance, and then start orchestrating the employee's termination based on some fabricated "performance issues."

39. Ms. Owens looked at the employee's file and objected to the baseless termination, since there were absolutely to "performance issues" that would justify S.O.'s termination. In fact, if the termination went forward, it would be unlawful, since it would be in express retaliation for her complaint about racial discrimination.

40. As a result, CCS did not move forward with S.O.'s termination at that time.

*Ms. Owens Notifies CCS That It Is Engaging*
*In Unlawful Age Discrimination On a Company Wide Basis*

41. CCS engaged in other discriminatory conduct. Notably, it has a companywide policy of only hiring drivers in their 30's since this reduced the company's insurance premium. However, such a policy violates the federal and state laws against age discrimination.

42. Thus, on June 28, 2019, when hearing about this policy, Ms. Owens wrote an email to CCS management, as follows: "Please note HR would not know the age and/or driving records until after an offer is made and accepted and we are given consent to conduct a background check. Therefore, this criterion is not legally something we can consider upon interviewing."

43. However, in response, CCS again dismissed Ms. Owens' concerns, and continued its unlawful, discriminatory policy.

44. Likewise, CCS had inconsistent leave policies. Some employees were allowed to take extended leave, without HR authorization, while other employees were denied extended leave. Ms. Owens recommended that CCS establish a consistent leave policy; however, her email and recommendations, were ignored.

### *Ms. Owens Is Willfully and Unlawfully Discharged*

45. While many of the above HR issues were pending, Ms. Owens was called to a meeting with the CEO, Mr. Bransky.

46. At this meeting, which was held on July 26, 2019. Ms. Owens was summarily fired. She was told simply, "this isn't working out for us."

47. In fact, Ms. Owens was willfully and unlawfully terminated in retaliation for opposing CCS' unlawful policies and complaining about same, including, inter alia: i) unpaid overtime; ii) unlawful deductions; iii) risks to the safety of children in the shelters; and iv) systemic discrimination.

48. There was absolutely no legitimate reason for Ms. Owens' termination; it was solely due to her complaints about CCS' unlawful policies and practices.

49. At the time of her termination, Ms. Owens' annual salary was $190,000.00.

50. Ms. Owens has suffered substantial harm as a result of Defendant's retaliatory conduct, and is now seek all damages available under the law, including compensatory damages, punitive damages, liquidated damages, costs and attorneys' fees.

### **FIRST CAUSE OF ACTION**
*(Unlawful Retaliation in violation of §215 of the FLSA)*

51. Plaintiff repeats, reiterates and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

52. The Fair Labor Standards Act § 215(a)(3) makes it unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint ... related to" FLSA's provisions."

53. Ms. Owens opposed, and complained about, CCS' policy of failing to pay its employees overtime wages at the mandatory statutory rate of one-and-one-half times the regular rate of pay for all hours over 40 in a work week.

54. Additionally, Ms. Owens opposed, and complained about, CCS' policy of taking unlawful deductions from its employees' paychecks. Ms. Owens raised this issue multiple times internally, but her warnings were repeatedly disregarded by Defendant.

55. As a result of having opposed CCS' policies which violated the FLSA, Ms. Owens was unlawfully terminated.

56. Defendant intentionally, willfully, and maliciously terminated Plaintiff's employment in violation of § 215 of the FLSA.

57. Accordingly, CCS is liable to Plaintiff for reinstatement and/or front pay, back pay, compensatory damages, punitive damages, pre-judgment and post-judgment interest, costs, reasonable attorneys' fees and other appropriate relief pursuant to New York Labor Law § 215.

## SECOND CAUSE OF ACTION
*(Unlawful Retaliation in violation of §215 of the NYLL)*

58. Plaintiff repeats, reiterates and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

59. NYLL§ 215 makes it unlawful to discriminate against an employee "because such employee has made a complaint to his or her employer, … that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates any provision" of the NYLL.

60. Ms. Owens opposed, and complained about, CCS' policy of failing to pay its employees overtime wages at the mandatory statutory rate of one-and-one-half times the regular rate of pay for all hours over 40 in a work week.

61. Additionally, Ms. Owens opposed, and complained about, CCS' policy of taking unlawful deductions from its employees' paychecks, which expressly violated NYLL § 193. Ms. Owens raised this issue multiple times internally, but her warnings were repeatedly disregarded by Defendant.

62. As a result of having opposed CCS' policies which violated the NYLL, Ms. Owens was unlawfully terminated.

63. Defendant intentionally, willfully, and maliciously terminated Plaintiff's employment in violation of § 215 of the New York Labor Law.

64. Accordingly, CCS is liable to Plaintiff for reinstatement and/or front pay, back pay, compensatory damages, punitive damages, pre-judgment and post-judgment interest, costs, reasonable attorneys' fees and other appropriate relief pursuant to New York Labor Law § 215.

## **THIRD CAUSE OF ACTION**
*(Unlawful Retaliation in violation of the NYCHRL)*

65. Plaintiff repeats, reiterates and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

66. Ms. Owens became aware that CCS was engaged in repeated acts of unlawful discrimination under the NYCHRL.

67. First, when an employee notified CCS of safety risks in the shelters, and Ms. Owens wanted to investigate the issue, CCS excluded Plaintiff from the meeting and forced the employee to resign for bringing the complaint.

68. Likewise, when an employee brought a complaint about racial discrimination, Mandelbaum asked Ms. Owens to fire her on fabricated "performance issues." Ms. Owens, however, refused to execute the termination since it would have been unlawful

69. Additionally, CCS adopted a policy which violates the age discrimination provision of the NYCHRL on its face. Specifically, CCS limited its applicants for the driver position at CCS to drivers over the age of 30. Ms. Owens opposed, and complained, about this policy, since it violated the age discrimination provisions of the NYCHRL.

70. In response, on July 26, 2019, CCS baselessly terminated Plaintiff's employment in retaliation opposing CCS' discriminatory policies, and complaining about same.

71. Defendant's retaliatory conduct in terminating Plaintiff's employment was willful and blatant, and in violation of the NYCHRL.

72. Plaintiff suffered damages as a result of Defendant's retaliatory conduct, including compensatory damages, punitive damages, liquidated damages, costs and attorneys' fees.

11

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff requests judgment against Defendant as follows:

i. Award to Plaintiff of her past and future lost wages and benefits, plus interest;

ii. Award Plaintiff liquidated damages;

iii. Award Plaintiff compensatory and punitive damages;

iv. Award Plaintiff all costs and reasonable attorneys' fees incurred in connection with this action; and,

v. Such other and further relief as to this Court deems just and proper, including interest and the costs and disbursements of this action.

Dated: New York, New York
December 23, 2019

          Respectfully submitted,

**JOSEPH & NORINSBERG, LLC**

By: _____
Chaya M. Gourarie, Esq.
225 Broadway, Suite 2700
New York, New York 10007
Tel: (212) 227-5700
Fax: (212) 406-6890
*Attorneys for Plaintiff*