# CONFIDENTIAL SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is entered into as of August ____, 2020, by and between Cynthia Owens, (hereinafter "Plaintiff" "Owens," or "Releasor"), on the one hand, and Childrens Community Services, (hereinafter "CCS," "Defendant," or "Releasee") on the other.

**WHEREAS**, on or about December 24, 2019, Plaintiff commenced an action in the U.S. District Court, Eastern District of New York, entitled *Cynthia Owens v. Childrens Community Services*, Case No. 1:19-cv-007219 ("the Action");

**WHEREAS,** on or about March 27, 2020, Defendant served as Answer to the Complaint, denying all material allegations asserted in the Action;

**WHEREAS**, the parties wish to avoid the burdens and costs of long and protracted litigation;

**WHEREAS**, the Parties understand and agree that Defendant denies each and every allegation of wrongdoing, including, but not limited to, the allegations and statements contained in the Complaint and all other related documents;

**WHEREAS**, the Parties desire to resolve, settle and agree to dismiss with prejudice the Claim and all claims and issues raised in or by the Complaint, and all other claims Plaintiff has made against Defendant or could make in any case or forum, and in all other respects to settle, bar and waive any and all claims that Releasor has or may have against Releasees without further litigation or adjudication;

NOW, THEREFORE, IT IS STIPULATED AND AGREED BY AND BETWEEN THE PARTIES AS FOLLOWS:

1. **Consideration to Plaintiff**

a. Within twenty-one (21) calendar days of Defendant's counsel's receipt of (i) a Settlement Agreement signed by Plaintiff, and (ii) IRS W-9 forms executed by Plaintiff and her counsel, Joseph & Norinsberg, LLC, Defendant shall deliver to Plaintiff's counsel checks resolving this matter totaling Twenty Seven Thousand Five Hundred Dollars And No Cents ($27,500.00) ("the Settlement Amount"). The Settlement Amount shall be payable as follows:

i. by check made payable to "Cynthia Owens" in the amount of Two Thousand, Five Hundred Dollars and zero cents ($2,500.00), less applicable taxes and

1

withholdings, to be reflected on a W-2 statement for payment of Plaintiff's alleged back-pay;

ii. by check made payable to "Cynthia Owens," in the amount of Fourteen Thousand Dollars and zero cents ($14,000.00), without any withholdings therefrom, to be reflected on an IRS form 1099 for payment of Plaintiff's alleged emotional distress;

iii. by checks made payable to "Joseph & Norinsberg, LLC" totaling the amount of Eleven Thousand Dollars and No Cents ($11,000.00), without any withholdings therefrom, to be reflected on an IRS form 1099 for payment of Plaintiff's attorneys' fees and costs incurred in this proceeding.

b. The Settlement Amount shall be delivered to Joseph & Norinsberg, LLC in furtherance of Plaintiff's full and complete release, satisfaction and discharge of all allegations between Plaintiff and Releasee as described below.

c. Plaintiff agrees that neither CCS nor any of CCS's parent companies, subsidiaries, affiliates and divisions and its current and former officers, directors, employees, shareholders, principals, predecessors, successors, assigns, insurance carriers, (including Philadelphia Indemnity Insurance Company) and attorneys (including Babchik & Young, LLP) , (all collectively as "the related entities") shall be liable for withholding or payment of any taxes on the payments set forth in Subsection (a)(ii) or (iii) above and that Plaintiff shall assume all responsibility for, and shall protect, indemnify, and hold harmless the related entities from and against any and all claims, losses, damages, liabilities, judgments, liens, costs, assessments, penalties, fines, fees, interest and expenses resulting from any liability or claim of liability for the Plaintiff's share of any taxes or other amounts claimed, imposed, assessed by or due to any federal, state or local government or agency thereof, and agrees to execute all documents that may be necessary to protect, indemnify and hold harmless CCS and its related entities in accordance herewith, solely as it relates to the payment in Paragraph 1(a) of the Agreement.

2. **Dismissal of the Action**

Plaintiff shall withdraw, in writing and with prejudice, all complaints, suits, actions, charges, claims, and/or proceedings she has instituted against Defendant. In the event that, for any reason, any complaint, appeal, suit, action, charge, claim and/or proceeding filed by Plaintiff is not wholly and finally dismissed with prejudice, Plaintiff shall not voluntarily testify, provide documents or otherwise participate, or permit others to participate on her behalf, in any such litigation, investigation or other proceeding arising therefrom or associated therewith, unless lawfully subpoenaed or otherwise ordered to do so by a Court or

Administrative agency, and shall not obtain or accept any recovery or relief therefrom, to the extent permitted by law.

### 3.     Release of Defendant

Upon execution of this agreement, Cynthia Owens, as Releasor, in consideration of the sum of Twenty Seven Thousand Five Hundred Dollars and No Cents ($27,500.00), payable as per Paragraph 1 above, and other good and valuable consideration, including the promises and covenants contained herein, received from or on behalf of CCS, receipt whereof is hereby acknowledged, releases and discharges Releasee, Releasee's parent companies, subsidiaries, affiliates and divisions and its current and former officers, directors, employees, shareholders, principals, members, predecessors, successors, assigns, insurance carriers and attorneys, from any actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims, and demands whatsoever, in law, admiralty or equity, asserted or unasserted, which against the Releasee, the Releasor, and her heirs, successors and assigns ever had, now have or hereafter can, shall or may have, for, upon, or by reason of any manner cause or thing whatsoever from the beginning of the world to the date of this Release, including but not limited to: (a) any claims, demands, and causes of action arising under express or implied contract, tort, or any tortious conduct, whether intentional or negligent, including negligent hiring and retention; (b) any claims for contribution or indemnity; (c) any claims, demands and causes of action alleging violations of public policy, or of any federal, state or local law, statute, regulation, executive order, or ordinance, including but not limited to, the Fair Labor Standards Act, 29. U.S.C. § 201 et. seq., Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq.; the Racketeer Influenced and Corrupt Organizations Act of 1991, 18 U.S.C. § 1961 et. seq.; the Civil Rights Act of 1991, Pub. L. No. 102-166; Sections 1981 through 1988 of Title 42 of the United States Code, 42 U.S.C. §§ 1981-1988; the Equal Pay Act of 1963, 29 U.S.C. § 206(d); the Vocational Rehabilitation Act of 1973, 29 U.S.C. § 791 et seq.; the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq.; the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq.; the Occupational Safety and Health Act of 1970, 29 U.S.C. § 651 et seq.; the Consolidated Omnibus Budget Reconciliation Act of 1985 § 4980B; the Immigration Reform and Control Act, as amended; the Workers Adjustment Retraining Notification Act, as amended; the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq.; the New York City Administrative Code; the New York State Human Rights Law, New York Executive Law § 290 et seq.; the New York Civil Rights Law, New York Civil Rights Law § 1 et seq.; Article 6 of the New York Labor Law, New York Labor Law § 190 et seq.; the New York Whistleblower Law, New York Labor Law § 740 et seq.; the New York Legal Activities Law, New York Labor Law § 201-d; the New

York occupational safety and health laws; the New York Fair Credit Reporting Act; any other federal, state, city or local wage-hour, wage-payment, human rights, civil rights, pension, employee benefits, labor or other laws, rules, regulations and/or guidelines, constitutions or ordinances; any public policy, contract (whether oral or written, express or implied) or tort laws; any claim arising under the common law; any other claim for unpaid wages, employment discrimination, retaliation, wrongful termination, constructive discharge, negligence, pain and suffering, mental anguish, intentional and/or negligent infliction of emotional distress; any claim for costs, fees, or other expenses, including attorneys' fees or any other action against Releasee, based upon any conduct occurring up to and including the date she executes this Agreement.

### 4. No Admission of Liability

While this Agreement resolves all issues alleged by Plaintiff against Defendant or which could have been alleged by Plaintiff against Defendant as of the date of this Agreement, as well as any future effects of any acts or omissions of Defendant which relate directly to Plaintiff's employment with Defendant and were alleged by Plaintiff or which could have been alleged by Plaintiff as of the date of this Agreement. It does not constitute an admission by Defendant of any violation of any federal, state or local law, ordinance or regulation or of any violation of CCS's internal policies or procedures or of any liability or wrongdoing whatsoever. Neither this Agreement nor anything in this Agreement shall be construed to be or shall be admissible in any proceeding as evidence of liability or wrongdoing by Defendant.

### 5. Non-Participation in Future Actions

Except as may be required by law, or by a lawful subpoena, Plaintiff shall not, in any way, voluntarily assist any individual or entity in commencing or prosecuting any action or proceeding against CCS, or any of its current and former employees including, but not limited to, any administrative agency claims, charges or complaints, and/or any lawsuits, counterclaims, cross claims, arbitral claims or other claims, or in any way voluntarily participate or cooperate in any such action or proceeding, except nothing herein shall be construed to preclude Plaintiff from freely communicating with the Equal Employment Opportunity Commission upon their request. This prohibition applies to every stage of any action or proceeding, including any trial, hearing, pretrial or prehearing preparation, pre-litigation investigation or fact gathering, administrative agency procedure or arbitral procedure, and bars Plaintiff from voluntarily testifying, providing documents or information, advising, counseling or providing any other form of voluntary assistance to any person or entity who wishes to make or who is making any claim against CCS or any of its current or former employees. In the event any such proceeding is instituted, Plaintiff shall not seek or accept any monies, award or recovery therefrom. Nothing in this paragraph shall prohibit

Plaintiff from complying with a properly served and lawfully issued subpoena or order issued by a court of competent jurisdiction or cooperating with the EEOC or other state or federal agencies or bodies.

### 6. Mutual Non-Disparagement:

a. Plaintiff agrees that she shall not make any statement, written, oral or electronic, which in any way disparages CCS, or CCS' business practices. However, this Paragraph shall not be interpreted to prevent Plaintiff from making truthful statements concerning her experience litigating this Action. Additionally, nothing in this paragraph shall prohibit Plaintiff from complying with a properly served and lawfully issued subpoena or order issued by a court of competent jurisdiction or cooperating with the EEOC or other state or federal agencies or bodies.

b. CCS agrees that it will not make any statement, written, oral, or electronic which in any way disparages Plaintiff.

### 7. Employment by CCS

c. Plaintiff affirms that she has reported all hours worked and has been paid and/or has received all leave, paid or unpaid, including but not limited to vacation days, bereavement leave, personal days and sick days, compensation, wages, bonuses, and/or benefits to which she may be entitled and that no other leave, compensation, wages, bonuses, and/or benefits are due to her, except as provided in this Agreement.

d. Plaintiff agrees that she will not apply for employment with CCS, and in the event she does, CCS may refer to this paragraph of the Settlement Agreement and Plaintiff agrees that such reference shall be sufficient reason for denial of her application. In the event that CCS acquires an entity that is then employing Plaintiff, nothing herein shall require Plaintiff to resign her employment.

e. CCS agrees to respond to any inquiries regarding Plaintiff's employment by confirming the dates Plaintiff worked for CCS, her position, and nothing further ("neutral reference").

### 8. Acceptance and Effective Date

Plaintiff was provided a copy of this Agreement on July 20, 2020. Plaintiff has not less than twenty-one (21) calendar days to consider this Agreement, including the confidentiality provision of this Agreement, and may accept this Agreement by signing and delivering the Agreement to CCS's counsel, Alexandra Robins, Esq., Babchik & Young, LLP, 245 Main Street, Suite 330, White Plains, New York 10601, no earlier than the 21st day after Plaintiff

receives the Agreement (i.e., August 10, 2020). After executing this Agreement, Plaintiff has up to seven (7) calendar days (i.e., until August 17, 2020) to revoke this Agreement (the "Revocation Period") by indicating Plaintiff's desire to do so in writing delivered to counsel for CCS, as per above, by no later than 5:00 p.m. on the seventh (7th) day after the date Plaintiff signs this Agreement. In the event that Plaintiff does not sign this Agreement and/or revokes this Agreement, this Agreement shall be null and void, and Plaintiff will not be entitled to receive the consideration or other benefits provided for hereunder. Provided Plaintiff does not timely revoke this Agreement, the effective date of this Agreement shall be the eighth (8th) day after Plaintiff signs and returns, and counsel for CCS receives, this Agreement (except that if the last day of the Revocation Period falls on a Saturday, Sunday or holiday, the last day of the Revocation Period will be deemed to be the next business day)

### 9. Representations and Warranties

a. The Parties represent and warrant that they and the individuals signing this Agreement on their behalf have full legal authority to do so. Plaintiff acknowledges that this Agreement is entered voluntarily and by Plaintiff's signature she indicates her full agreement with, and understanding of, its terms. Plaintiff affirms that she has no physical or mental impairment of any kind that has interfered with her ability to read and understand the meaning of this Agreement or its terms. Plaintiff further represents and warrants that she is the sole owner of the claims being settled by this Agreement, and that those claims have not been assigned, sold or otherwise transferred to any other person or entity.

b. Plaintiff acknowledges that she has had sufficient time to consider this Agreement and to consult with counsel of her choosing. By signing this Agreement, Plaintiff represents that she has freely, knowingly and voluntarily decided to accept the terms of this Agreement, that this Agreement and its terms have been explained to her by her attorneys, and that this Agreement has binding legal effect.

### 10. Binding Agreement.

This Agreement shall be binding upon any successor or assign of the Parties. The Parties acknowledge that this is an agreement resulting from negotiations involving counsel, and agree that any rule stating that ambiguous language shall be construed against the drafter will not be applicable.

### 11. Complete Agreement.

This Agreement represents the entire agreement between the Parties with respect to the subject matter of this Agreement, and there are no understandings or agreements except those specifically stated in this Agreement. The terms of this Agreement may not be modified except pursuant to a document signed by all of the Parties, and no right may be

waived except pursuant to a document signed by those of the Parties expressly waiving that right.

### 12. Miscellaneous Provisions

a. This Agreement may be executed in counterparts, all of which taken together shall constitute one instrument enforceable and binding upon the Parties. Photocopies, faxed or scanned images of signatures shall be sufficient to bind such party to the terms of this Agreement.

b. Nothing in this Agreement is meant to be inconsistent with EEOC Enforcement Guidance on Non-Waivable Employee Rights Under EEOC-Enforced Statutes dated April 11, 1997.

c. If any of the provisions, terms, or clauses of this Agreement are declared illegal, unenforceable, or ineffective in a legal forum, those provisions, terms, and clauses shall be deemed severable, such that all other provisions, terms, and clauses of this Agreement shall remain valid and binding upon all Parties, or as the Eastern District of New York so directs.

d. Except as otherwise stated in this Agreement, each party shall bear its own attorneys' fees, costs and disbursements and there shall be no application to any court or agency by any party or by his/its attorneys for attorneys' fees, costs and/or disbursements.

**IN WITNESS WHEREOF**, the Parties have executed this Agreement in the spaces and on the dates provided below.

Dated: 8/26/2020

_____
CYNTHIA OWENS

STATE OF NEW YORK  )
                  )ss:
COUNTY OF NEW YORK )

On this 26th day of August, 2020, before me personally came Cynthia Owens known to me to be the individual described in, and who executed the foregoing Settlement Agreement, and duly acknowledged to me that she executed the same.

_____
Notary Public

BARBARA CASAP
NOTARY PUBLIC-STATE OF NEW YORK
No. 01CA6368653
Qualified in Nassau County
My Commission Expires 12-18-2021

7

[Intentionally left blank]

Dated: _____                      CHILDRENS COMMUNITY SERVICES

                                                    _____
                                                    By:   Seth Muraskin, CAO

STATE OF NEW YORK       )
                        ) ss.:
COUNTY OF NEW YORK      )

On this ____ day of August, 2020, before me personally came Seth Muraskin, to me known, who, by me duly sworn, did depose that deponent is the Chief Administrative Officer of CCS, the entity described herein, and which executed the foregoing Settlement Agreement, and duly acknowledged to me that he executed the same on behalf of the corporation.

_____
         Notary Public